Knights v. City University of New York Mr. Rosinus. Yes, Your Honor. Three minutes for rebuttal. You can begin whenever you're ready. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. I am Alan Rosinus. I represent the City Appellants. Your Honors, the District Court's decision here requires reversal because by its own admission, it did not follow this Court's binding precedent from Peno. On page two of its decision, it says that the Court, quote, cabined the circumstances. That's the District Court's own word. Cabined the circumstances in which there are exceptions to the general rule in Farrar that you get no fees at all in nominal damages only cases. And on the next page of its decision, it said the Court recognizes, this is a quote, that this case does not fall within any of the exceptions articulated in Peno and the other post-Farrar cases. So let me ask you, though, this language about from Farrar about you only get, you don't get fees if you only have nominal damages because you failed to prove an essential element of your claim for monetary relief. Isn't the claim on which plaintiff prevailed here an independent claim? That this is the claim about wanting the name-clearing hearing? Right, Your Honor. So he failed entirely on his claim for economic damages and termination, right? Right. But as to the claim on which he prevailed, wasn't it an independent claim that all he was asking for was more of a declaration? It was like, I should have gotten a hearing. And the jury says, yeah, you should have. But that claim doesn't carry any economic damages. So you win, but the result of a win here is nominal damages, sort of by definition. How does that fall within that language of Farrar that the reason the only reasonable fee is no fee at all is because you failed to prove an essential element of the claim on which you prevailed? I think, Your Honor, the language is that you failed to prove an essential element on your claim for monetary relief. Exactly, Your Honor. Monetary relief, which is to say compensatory damages. This claim didn't have a claim for monetary relief, did it? Yes, Your Honor. I'm sorry to interrupt. He was seeking compensatory damages for the stigma plus claim based on reputational damages. And what happened at the district court level was district court instructed the jury that if he could not show, because it was his burden, that the sexual harassment claim was false, then he could not recover monetary damages on the stigma plus claim. The stigma plus claim was the only claim that survived summary judgment, Your Honor. So if they had concluded that it was a false allegation, he could have gotten a lot of money potentially on the due process claim. Exactly, Your Honor. At least he could have gotten some amount of compensatory damages. I don't know how much he would have gotten, but I don't want to speculate, but yes, he could have gotten some amount. Go ahead, Your Honor. I'm sorry. It seemed that the district court, just going back to your initial point about how this fell within some exceptions, seemed to think that there was some gamesmanship going on by standing in front of the Article 78 judge and saying he's going to be able to clear it, he's going to be able to litigate this in the arbitration proceeding, and then going into the arbitration proceeding and saying we've paid him the money, it's moved, and therefore he had no opportunity to clear his name. I think that was really driving the district court's decision, and the district court didn't say it was bad faith, but there's always suggestion at least of gamesmanship, so assuming that that could be a reason to place this outside of the normal rule from Farrar, is that what happened, or why is that not problematic? The judge used problematic many times. Yes, Your Honor. Can you address that? Yes, go ahead, I'm sorry. Can you address that? Yes, of course, Your Honor. First, I will get to your question. Obviously, we disagree with the premise that that is a basis under which you can get fees here. We think it's only about the relief awarded, but saying that aside, first of all, as Mr. Seymour says in his briefing, there was about a year between when the city moved to dismiss the Article 78 and when the city made the argument for the arbitrator that the matter was moved, and only right before the matter was moved out did the city decide to pay him the balance of his- I thought the oral argument on the Article 78 was in May, where the lawyer said to the judge, you know, he's got the the judge dismissed the Article 78 in June, and then in August, two months later, the CUNY moved to dismiss the arbitration. Maybe I got the time frame wrong, but I apologize if I did. But let me say this. There's no evidence of bad faith here. I mean, for one thing, you have different proceedings. I think there were different attorneys at the Article 78 level and the arbitration, but more to the point, there was a litigation decision made after the Article 78 proceeding to deal with it in this way. If the plaintiff had wanted- there was- not the plaintiff, but Knights, one of the arbitrating parties, had wanted to- had felt that it was wrong. The district court said, yeah, the arbitrator was wrong in saying that it was moot because there was still this due process requirement for a name-clearing hearing. If that was so, he could have appealed the arbitration proceeding under Article 75. I think we may have said our brief on Article 78. He could have brought another Article 78, couldn't he? Yeah, it might have been Article 75. CPLR 7511 is what contains the grounds for vacature or otherwise reversal of an arbitration award, but there are grounds in that for- Could he have asked in the arbitration proceeding when CUNY walked in and said, we paid him the money, it's moot, could he have- his lawyer stood up or he stood up and said, wait a second, I want this to continue because I want to clear my name in the arbitration proceeding. Was that a possibility? I would think so, Your Honor. I mean, the district court's own decision is premised on the theory that he says- the district court says explicitly in its decision toward the end, I forget the exact page, that the arbitrator erred by failing to continue with the arbitration because he deserved a name clearing hearing. So that- if the district court is right, then he absolutely could have stood up in- at that stage and said, Mr. or Mrs. Arbitrator, we have to proceed still because I still have a due process entitlement to a name clearing hearing. And again, even if the arbitrator had then disagreed, he could have brought a proceeding under 7511 to vacate the arbitration award, send it back to the arbitrator. I'm just- maybe I don't understand the employment issues here, but the CUNY extended his employment by a month to complete the investigation rather than just let his temporary employment lapse. Yes. Why would they do that? I don't know, Your Honor. I don't remember that being in the record, but I guess because- I don't want to speculate. Because this wouldn't have happened at all. If they had just let his employment lapse, right? This only came up because then he didn't- he got the extension. They didn't pay him the two weeks when they did terminate him, right? Yes. And I mean, let me speculate very quickly because I- but it is speculation. They had to place him on administrative leave. So maybe they had to do that for a certain term of days that was not precisely congruent with whatever time was left in his contract. I don't know, Your Honor. I mean, I think the bottom line- we would essentially contend that that's getting into facts that are not material to the- I agree. No, it's fine, Your Honor. Thank you. I've got a few questions before you. Yes, Your Honor, of course. So you would agree that we are bound by both Farrar and Pena? Yes. So if you could help- if you- how would you recommend that we articulate the language that Judge Miriam just inquired about and the two Peno exceptions? How would we harmonize that? Well, again, I think that the question is did he fail to prove an essential element of his claim for monetary relief? And he- because if he did, then he has to fit within some other exception to Peno, and those other exceptions are either some form of significant injunctive relief or at least some injunctive relief at all, which he didn't get here, or some decision in his favor on a novel issue of law. And that, as the district court said, that cabins the set of exceptions. So you think it's a two-step? It's like, do you hit Farrar, and if the answer is yes, then you move to Peno? I think that's right, Your Honor, yes. No, I want to make sure I understand what you're saying. Yes, that is the way I would articulate it. So first, on-off switch for Farrar, and then if yes, then you figure out where in Peno it goes. But if you don't meet the Farrar standard, you don't even go to Peno. Is that how you would- is that how you're articulating it? I think so. I mean, the one caveat I would say, Your Honor, is that Peno is- sorry, Farrar is about scenarios where I think it's broader than that particular situation where you can't approve an essential element of your claim for monetary damages. I think it applies to any scenario where you're seeking compensatory damages and you get only nominal damages. So there might be situations where- that are beyond that one scenario where you don't prove one element because either you failed on your monetary damages claim for some other reason, if that's possible, which I think it probably is. I haven't thought about that, I admit, extensively. But I think that the important fact here is he was seeking $45 million, Your Honor. He was seeking $15 million in compensatory damages and $30 million in Peno damages plus some additional compensatory damages to be calculated later. So it actually was over $45 million. And he got $1. And he got nothing else. And, you know, when you look at Farrar, it was $17 million. My opponent wants to rely on Justice O'Connor's concurrence. Justice O'Connor said in that case, well, this is a clear case where he gets no attorney's fees because he asked for a bundle and got a pittance. There he was asking for $17 million. Here he was asking for $45 million. Same thing in Peno. This Court said, well, it specifically talked about Justice O'Connor's concurrence. It said that there he asked for a bunch and got nothing. And here it's even more because he's asking for $21 million. That was the amount that the plaintiff was asking for in Peno. And what Nights is asking for is over double that, Your Honors. So... Thank you, Your Honor. We'll hear from Mr. Seymour. Good morning, Your Honors. Of course, my name is Roosevelt Seymour and I represent the appellee. And, Your Honor, first principle I would like to state to the Court is that both Farrar and Peno states that there are circumstances under which a civil rights plaintiff who receives only nominal damages are entitled to attorney's fees. So there is no per se rule either from Farrar or from Peno that... Peno dictates we are in that world because, as you pointed out, you sought $45 million. That's not the case, Your Honor. Could I correct that? Yes. The actual prayer for relief was $5 million for... There were alternative claims and each of them sought $5 million. So when you cumulative all of them up together, he claimed it's $25 million. You're asking for a lot. Excuse me? You're asking for a lot. Millions of dollars and you got one, right? That's correct. So we are in that world and then his argument is that you have to fit within one of the Peno exceptions. The District Court said it doesn't fit but I'm going to award it for these other reasons. This is not a new novel issue of law that you got resolved like in Cabrera. It was saying landlords can be held liable for real estate brokers who are racially profiling. So that was obviously a big new novel ruling. We don't have that here, right? That's correct, Your Honor, but I would like to emphasize that the Cabrera case is only one example where courts have said, yes, there was a significant... So what was the significant victory for the public here? Of course, the District Court emphasized that the importance of a name-clearing hearing and how the District Court believed that's a substantial constitutional issue that separates this case. But the law was established on that. It's not like you established for the first time that you're entitled to name-clearing. It's just an issue of whether or not your client somehow lost that opportunity in this particular case, right? That's correct, Judge. His decision was not based upon any type of huge legal victory you had. He thought that they, as I pointed out, he mentioned it, I don't know how many times, three times, including at the end of the opinion, that they, through some gamesmanship, forced you to bring a federal lawsuit because your client couldn't clear your name in any other way. That was the reason, right? That was one of his reasons, Judge. He felt that... That was the reason. What were the other reasons? Well, this particular district judge gave primacy to the fact that the right to a name-clearing hearing is a significant constitutional... He said because CUNY mooted Knight's right to have the legitimacy of his termination decided in the arbitration proceeding, Knight certainly had no choice but to resort to judicial recourse and have an opportunity to clear his name. Yes. And he said that 200 times, too. Yeah. Clearly that was an important reason. Let me ask you about that because this is what I don't understand about that. When the Article 78 was taking place, there was this oral argument where there were two different lawyers. There was one lawyer on the arbitration. There was one lawyer on this Article 78. And they asked the Article 78 lawyer, is this arbitration going to keep going? And he said, I'm not the lawyer on that. I'm not exactly sure. And the judge basically said, well, you know, I need to know that before I decide to dismiss this. And at the end, the lawyer said, they will go to arbitration. My clarification is that I don't know what issues will be represented there. So the lawyer indicates even then some uncertainty about what the scope of that arbitration is. But in the decision where the Article 78 is dismissed, the judge says this at the end of the opinion, petitioner may of course challenge the outcome of that arbitration proceeding by filing a new Article 78. And to the extent that petitioner disagrees with the scope of the issues explored in the arbitration, so he's referencing what would happen at the oral argument, that too may be raised in a new proceeding. But petitioner may not challenge his termination in this court before he has fully utilized the process afforded to him. So I just don't understand the conclusion by the district court that you had no choice but to initiate this big federal lawsuit when the Article 78 judge invited you if something happened in arbitration in terms of the scope to come right back and file another Article 78. Couldn't you have done that? No, Judge. That would not have been... You dismissed this and the Article 78 is now moved. I mean, the arbitration is now moved. Couldn't you have done that? Unfortunately, Judge, that would not have been possible because the... Even though he invited you to do that? Excuse me? Even though he invited you to do that? The CPR provides specifically that you only have, I think it's a 4-month statute of limitations to bring an arbitration proceeding. I mean, I'm sorry, an Article 78 proceeding. So at that time when the arbitrator mooted out the case, over a year. So it would have been impossible to go back to the judge in an Article 78 proceeding because they clearly would have moved to dismiss saying the statute of limitations had expired. So there was no way, notwithstanding what the judge said... You can't bring that Article 78 until they deprive you of your name clearing in the arbitration. How could it be untimely if they dismiss the arbitration and you can't clear your name within 4 months of that? That's correct. If you bring an Article 78 beyond the 4-month period... I'm saying the 4-month period wouldn't start until you told me you were dismissing the arbitration. You cannot challenge an arbitrator's decision by way of an Article 78. It has to be by way of Article 75. Okay. So could he do an Article 75? No, because under Article 75 it's very restricted under which you can challenge an arbitrator's decision. It has to be fraud, misconduct. You cannot challenge it because you disagree with the arbitrator's moot. In front of the arbitrator when they stand up and say we're dismissing this arbitration proceeding that's moot because we've paid him the money, couldn't he say no, I want to clear my name too. This is not over until I clear my name. Couldn't he say that to the arbitrator? You could say that, but the arbitrator has already ruled so that leaves you to see whether you can challenge the arbitrator's decision. But the rules for challenging an arbitrator's decision is restricted to fraud and misconduct. And I think there may be one other ground, but you cannot challenge it because the arbitrator made an erroneous legal ruling. So the only option which Judge Block clearly realized was to go to federal court and that's what we had to do. As I stated in my brief, Messonite simply wanted either administrative determination of his guilt or have the Article 78 judge direct that there be some type of due process named clearing hearing. Because of their legal strategy we were not able to do that so we were forced the only option left for us was the Section 1983 case and that's what Judge Block realized and Judge Block properly took that into consideration when he decided that this is the case where attorney fees would be appropriate. Counsel, let me ask you a question. I was surprised that neither party mentioned Buckhannon and there's a second sort of case, Matusik. Farrar and Pinot predate Buckhannon. Buckhannon doesn't talk about awards of fees in nominal damages cases but Buckhannon solidifies, confirms, reiterates the principle that we award attorneys fees to prevailing plaintiffs because we have to incentivize this sort of litigation and Buckhannon says a prevailing party is one who has been awarded some relief. That's the Supreme Court speaking after Farrar and Pinot and then we similarly in Matusik, which is about 10 years ago, said we just want to remind everybody in a published opinion that an award of nominal damages does not foreclose an award of attorneys fees. So there is no question that attorneys fees are available. It's only the reasonableness of the amount, right? That's correct. And we review that for an abusive discretion, right? That's correct. Okay. And that's why Your Honor, I would like to emphasize the issue of abusive discretion. The appellants are saying that there was some type of legal error on the part of Judge Block's decision. There was none. He reviewed Pinot. He reviewed Farrar and he distinguished those cases. Whether or not they agree with his analysis that's besides the point, but he had the power and the discretion to distinguish the facts in his case. We'd be creating a new exception, right? No, Your Honor. He did not. Judges have equitable powers, inherent equitable powers to consider all the circumstances in the case before them when they're called upon to make a ruling on attorneys fees. I'm sorry. I just want to, I apologize if I'm being obtuse, but I don't understand whether you are telling us that Farrar and Pinot allow us to exercise equitable moves to recognize this or whether you are telling us that it is already one of the recognized exceptions under Pinot. Which one are you arguing? Because one seems to be creating new law where, which we can do, right? We have to find a new exception. Another one says we fit under existing law. And I just looked at your brief. There is no mention of Buchanan at all. So I'm hoping you can tell me how we harmonize Buchanan with Pinot and Farrar after you answer the first question. What are you asking us to do? Are you telling us that we need to create a new exception and Farrar and Pinot allow us to do it? Or are you telling us that it exists under an existing exception to Pinot or an existing category of Pinot? What I'm saying, Your Honor, is that Pinot, both Pinot and Farrar do state certain principles, certain framework under which district judges can make their rulings on what they consider to be reasonable attorney's fees. It's a framework. But within that framework, even though exceptions are articulated each time a new set of facts come up before a court, but it's not a set of rules that says... Okay, so you're saying that we can create a new exception. That's correct, by case law. And so what would be the articulable exception that is presented by your case? Is it one of when they act in bad faith? Is it as... Well, that would be one permissible consideration a judge could take into account. I just want to know, how would we articulate the exception that you are saying we need to create to capture your case? Well, I would put it this way, Your Honors. I would say that as long as the district judge is mindful of the ruling in Farrar, which states that the civil rights violation involved is not insignificant or de minimis, if the district court makes a finding that there is an important and significant civil rights violation upon which the plaintiff prevailed, then the district court, I would suggest, would then go to the next step to say, which is articulated by Justice O'Connor in Farrar in her concurring opinion, to say whether the circumstances in this case bestows a public benefit. And in this particular case, we could argue that the public benefit is that anyone accused of a stigmatizing allegation by a government... Isn't that number one, though? Isn't the number one exception under PINO when it creates a new rule of liability that serves a significant public interest? Yeah, that's one of the exceptions recognized in the Cabrera case. Right. So, again, are you saying that you fit under an existing exception, or are you trying to say that we should create a new one that captures your case? I would say the courts should continue to allow district courts, based on their discretion, to determine, based on the particular facts in their case, when attorney fees are reasonable, if it's based on bad faith litigation, misconduct... Well, I'm asking about the bad faith part of it, because there was no hearing. We don't know why what transpired. As I pointed out, there were two different attorneys on each of the arbitration, the Article 78. This was a pretty unusual situation. We had a temporary employee whose time working was expiring. So why should we... What was the base for concluding that this was bad faith as opposed to just an unusual situation where things were happening fast, and only about two weeks pay, and two different attorneys on two different matters weren't communicating with each other completely? But, Your Honor, if you read their brief, they said this was their litigation strategy. Who said that? In their brief, yes. They said this was their litigation strategy. Their litigation strategy was to moot out any opportunity for a name-claim hearing, and Judge Block didn't think that was a legitimate way to proceed. Yes, they stated this was a legitimate litigation strategy, to moot out his opportunity for a name-claim hearing, and Judge Block says he could not endorse that. So, in answer to Your Honor's question about rules, I think district courts should be free to determine whether a party's conduct, or possibly misconduct, should be taken into account when awarding attorney's fees. On either side, if a plaintiff commits misconduct, the judge should be able to consider whether attorney's fees should be awarded, and if a defendant commits misconduct, courts have equitable discretion as to whether that should be taken into consideration. Mr. Seymour, you're done. I'm sorry about that. That's okay, thanks. Okay, Mr. Racines, you have three minutes in rebuttal. Thank you, Your Honor. And I would be interested in hearing how you think Buchanan affects this case. I'm sorry, Your Honor? How you think Buchanan affects this case. So, a few things, Your Honor. First, we're the appellants here, but Mr. Seymour and Mr. Knights was the party below moving for fees. He's never raised, as far as I remember, Buchanan as a basis for his fee award here. He also doesn't raise it in his brief before this court. I would say that he's waived any argument to that effect, and if he hasn't, I would respectfully request that we be allowed to do something on the briefing on that. Well, we're allowed to consider existing Supreme Court precedent when we decide what the law is and whether a district court abuses discretion, right? You're not asking us to ignore Buchanan because neither of you mentioned it. No, and I'm only asking, which you can take under advisement and decide as you wish to do something on the briefing if the court is going to consider deciding on that basis. But let me address the merits. She was referring to the principle of Buchanan, not that it would be decided under that theory. Yeah. Yes, Your Honor, I understand. So, I think the important thing to recognize about Farrar as it relates to Buchanan is that Farrar says that the plaintiff is a prevailing party in Farrar. There's no dispute here that Mr. Knights is a prevailing party, but what Farrar says is, regardless, you still get some relief beyond nominal damages pursuant to the details that it discusses in order to get any fees at all. It's been a long time since I read Buchanan, Your Honors, but I think I remember it being about whether fees were available in some settlement context in terms of that... It has to do with who actually qualifies as a prevailing party. Right. But Farrar doesn't say that you are not eligible for fees if you get nominal damages. That is not what Farrar says. No, I agree, Your Honor. It says you get... There is no threshold question of eligible or ineligible. It's simply a question of where does it fall on the reasonableness scale, and that in some of these cases reasonable is going to be zero. And in some of them it's not. But Farrar doesn't... You're suggesting that Farrar says there are no attorney's fees in nominal damages cases, or unless it fits in a very particular hole that someone has drawn. I didn't mean to suggest that. If I did, Your Honor, I misspoke and I apologize. I think, yes, but I agree basically with what you're saying about Farrar. But Farrar and Pino work together. And Pino as the district court says, cabins in the set of circumstances where the exception to the general rule in Farrar applies. Mr. Seymour keeps talking about the importance of the constitutional right issue, which is what the district court focused on. That is not a basis for fees under Farrar or under Pino. Farrar and Pino focus on the relief granted. As for the 7511 point, 7511A1 talks about fraud or corruption being a basis to overturn an arbitration award. I completely disagree that we were corrupt, but that's what Mr. Knights is arguing, that we were corrupt. A3 talks about the award being so in excess of jurisdictions or otherwise improper that there was no steady, determinate and final decision. That's exactly what he's arguing here as well. So he would have been entitled to argue under 7511 to take it up that way. I don't understand his argument. He had the award dismissing the arbitration. At that point, that's when the four months began to run. I don't know what he's talking about over a year. He said in your brief that you conceded that this was a litigation strategy to move out his opportunity to clear his name. He's suggesting, I think, that the lawyer in front of the Article 78 judge knew that the arbitration was going to be mooted out and misrepresented that. Right, I was going to address that. No, because the arbitration being mooted out came after the Article 78 decision. No, no. Our brief was not suggesting at all any coordination between the counsel. We were talking about litigation strategy in the context of the arbitration. If I should have said arbitration strategy, I apologize. We were not saying that there was any collusion or any coordination between the attorneys on the Article 78 and the attorney on the arbitration. All we were saying was we mooted out the arbitration by paying him. Exactly. That's all we were saying. He suggested that I was saying something else. We were not. Thank you.